IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REGINALD B. WARE,

          Plaintiff,

    v.

BANK OF AMERICA
CORPORATION,

          Defendant.

CIVIL ACTION FILE NO.

1:13-CV-01647-CC-GGB

## FINAL REPORT AND RECOMMENDATION

The above-styled matter is before the Court on the motion for summary

judgment filed by Defendant Bank of America Corporation ("Defendant").[1]  Plaintiff

Reginald B. Ware ("Plaintiff") is proceeding in this matter *pro se*.  For the reasons

---

[1] According to Defendant Bank of America Corporation's summary judgment
motion, in October 2006, Bank of America USA, N.A. merged with MBNA America
Bank, N.A. to form FIA Card Services, N.A. ("FIA"), and FIA thereby acquired
Plaintiff's credit card account as a result of the merger.  [Def.'s Stmt. of Undisputed
Mat. Facts, Doc. 6-10, at ¶¶ 7-8].  Bank of America Corporation asserts that the
defendant, therefore, should more properly be referred to as FIA.  [Doc. 6 at 1].
Plaintiff has not disputed Bank of America Corporation's assertions.  In fact, Plaintiff's
response in opposition to the motion for summary judgment acknowledges that Bank
of America Corporation and FIA Card Services N.A. took over the account from the
original creditor, MBNA.  [Doc. 12 at 2].  Because the docket for this case continues
to list Bank of America Corporation as the defendant, for purposes of this report and
recommendation, any references to "Defendant" should be construed as also meaning
FIA, where appropriate.

stated below, I **RECOMMEND** that Defendant's motion for summary judgment [Doc. 6] be **GRANTED**.

## I.  **BACKGROUND**

On May 15, 2013, Plaintiff filed a *pro se* complaint in this court alleging claims for damages and injunctive relief pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.  [Doc. 1, Compl., at 1].

Plaintiff's complaint alleges that Defendant has repeatedly violated the FDCPA by attempting to collect on a debt allegedly owed by the Plaintiff, and by failing to validate the debt in accordance with the FDCPA.  [Compl. at 4-5].  Plaintiff alleges that he reviewed his credit report on May 4, 2012 and discovered a delinquent account. He alleges that he disputed the account with "the credit agencies" Equifax, Experian and Trans Union.  [Id. at 6].  Plaintiff asserts that he also mailed a debt validation letter dated September 10, 2012 to Defendant, but Defendant refused to comply with the demands that he made in his letter, including the demands that Defendant mail Plaintiff a signed copy of his original contract, and a signed copy of the original application between Plaintiff and Defendant in reference to the alleged debt.  [Id. at 5-6].  Plaintiff

2

denies ever opening a credit account with Defendant Bank of America, and asserts that he spoke to several bank representatives about removing the erroneous account.

With regard to Plaintiff's claim under the FCRA, Plaintiff alleges that Defendant repeatedly violated the FCRA by reporting (and continuing to report) on Plaintiff's credit bureau report from January 2010 until the present day that Plaintiff is delinquent on a debt. [Id.]. Plaintiff alleges that in or around January 2013, Defendant mailed a 2012 1099-C cancellation of debt form to Plaintiff, purportedly informing him that Defendant had charged off the alleged debt to the Internal Revenue Service ("IRS") in the amount of $26,845.57 as of December 31, 2012. [[Id. at 7; Doc. 1 at 16, Pl.'s Ex. 7]. Plaintiff states that when he obtained a copy of his credit bureau report on February 17, 2013 and again on April 15, 2013, the reports continued to show a debt balance of "$26,845." [Compl. at 7, 13-14].

Based on the 1099-C cancellation of debt form that he received, Plaintiff alleges that Defendant is attempting to collect on a non-existent debt twice, once from the IRS and also from the Plaintiff. Plaintiff further alleges that he called Defendant on May 13, 2013 and spoke to one of its representatives, Trent Machalette, who told Plaintiff that the account was charged off to the IRS, but that Plaintiff still owed the balance to Defendant and Defendant is actively attempting to collect the debt. [Id.

3

at 7].

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the nature of the movant's initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(en banc).  "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Where the movant bears the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence sufficient to withstand a

motion for directed verdict at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1116.  The nonmovant is required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial."  <u>Celotex</u>, 477 U.S. at 324.  <u>See</u> Fed. R. Civ. P. 56(e).  "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." <u>Bald Mountain Park, Ltd. v. Oliver</u>, 863 F.2d 1560, 1563 (11th Cir. 1989). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

### III.  APPLICABLE FEDERAL AND LOCAL RULES

Plaintiff has failed to file a proper response to Defendant's Statement of Undisputed Material Facts accompanying its motion for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B).

Under Local Rule 56.1 of the Northern District of Georgia, a party moving for summary judgment must include "a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried." LR 56.1(B)(1), NDGa.  Along with a responsive brief, the respondent to a summary judgment motion must include a response to the movant's statement of undisputed facts, which contains "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." LR 56.1(b)(2).  The Court deems the movant's facts admitted unless the opposing party either refutes the facts with citations to evidence or law, or states a valid objection to the movant's evidence.

Along with his responsive brief, Plaintiff has filed two affidavits, one from himself and one from his wife, in an effort to refute two of the facts asserted by the Defendant.  Plaintiff avers that he did not reside at the address listed on the original credit card application (2555 Knox St., Atlanta, Georgia) on or around May 17, 1996, and that he has not lived at that residence since 1989. [Doc. 12 at 13, Reginald Ware

Aff.].  Plaintiff has also submitted an affidavit from his wife stating that her name is spelled M-e-l-o-n-i-e Ware, not M-e-l-a-n-i-e Ware (as is shown on the credit card application that Defendant has submitted).  [Doc. 12 at 15, Melonie Ware Aff.].

Except for the two facts that Plaintiff has directly disputed in the affidavits filed by Plaintiff and his wife, Plaintiff has neither refuted Defendant's facts with citations to evidence or law, nor has he stated valid objections to the material facts as set forth in Defendant's Statement of Undisputed Material Facts.  Accordingly, the undisputed facts are deemed admitted by operation of law.  LR 56.1(B)(2); <u>Reese v. Herbert</u>, 527 F.3d 1253, 1267-69 (11th Cir. 2008); <u>see also</u> Fed. R. Civ. P. 56(e) ("If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion.").

## IV.  FACTS

In light of the foregoing summary judgment standard, and the federal and local rules discussed above, the Court deems the following facts admitted for the purpose of resolving Defendant's motion for summary judgment only.

Plaintiff's credit card account (the "Account"), with an account number currently ending in 9690 and previously 5414, was opened with MBNA America Bank, N.A. ("MBNA") on June 14, 1996.  The Account originally had an account number

ending in 3106.  [Def.'s Stmt. of Mat. Facts ("DSMF") ¶ 1].  The Account was opened after MBNA received a written, signed application dated May 17, 1996 which listed the applicant as Reginald B. Ware, who was born in 1965 and whose Social Security number ends in 1703.  The pre-printed address on the application form is "2555 Knox St NE, Atlanta, GA, 30317-2829."    [Doc. 6-3 at 1].  The application bears the signature of the applicant, Reginald B. Ware.  [Id.; DSMF ¶ 2].

From June 14, 1996 through July 17, 1999, MBNA sent all Account statements to the Atlanta address listed on the application.  [Doc. 13-1, Supplemental Decl. of Eric Pyle, ¶ 4].  From July 17, 1999 through December 3, 2004, the statements were sent to Plaintiff at 4476 Boatman Cove, Stone Mountain, Georgia.  [Id.].

On or about December 3, 2004, Plaintiff advised MBNA that his address had changed to 2649 Nelms Court, Decatur, Georgia.  From that time forward, MBNA (and later Bank of America/FIA) sent all Account statements and correspondence concerning the Account to Plaintiff at 2649 Nelms Court, Decatur, Georgia, 30033. [Id.; DSMF ¶ 5].

On or about May 27, 2005, MBNA sent a new card to Plaintiff at his home address, 2649 Nelms Court, Decatur, Georgia.  [DSMF ¶ 6].

AO 72A
(Rev.8/82)

In October 2006, Bank of America USA, N.A. merged with MBNA America Bank, N.A. to form FIA Card Services, N.A. ("FIA").  On or about August 17, 2006, Plaintiff was issued written notification of the merger and a new credit card (ending in 5414) to replace his existing MBNA credit card (ending in 3106).  [DSMF ¶ 7; Doc. 6-6 at 1].

In October 2006 when FIA acquired the Account as a result of the merger between MBNA and Bank of America, Plaintiff was not in default on the Account. [DSMF ¶ 8].

In January, February and March, 2007, Plaintiff executed a number of access checks on the Account.  [See Pyle Decl. ¶ 10 & Ex. E (Check #1000, dated January 31, 2007, for $500.00; Check #1001, dated February 1, 2007, for $1,000.00; Check #1002, dated February 13, 2007, for $2,000.00; Check #1009, dated March 8, 2007, for $1500.00)].  Credit card access checks are used like personal checks to pay bills and expenses, or to pay off balances on higher-interest accounts.  [Doc. 6-5 at 3].

On or about September 17, 2007, Plaintiff initiated a complaint concerning the Account with the Better Business Bureau ("BBB").  [DSMF ¶ 10].  In Plaintiff's BBB complaint, which was forwarded to FIA, Plaintiff asserted the following:

9

> My card was purchased by bank of america from mbna and
> i have had this account for over ten years with no problems.
> They have increased my interest rate from 14% to 24.99%,
> and i do not understand why.

[Id.; Doc. 6-8, Ex. F, at 1-2]. Plaintiff further alleged that there had been several billing errors and the bank had erroneously reported several of his payments in 2007 as being late. The home address that Plaintiff listed in the BBB complaint is the same address as the address listed in the complaint filed in the current case. [Doc. 6-8 at 2].

On October 1, 2007, Defendant mailed its response to Plaintiff's BBB complaint concerning Plaintiff's Account ending in 5414. The response was addressed and sent to Plaintiff at his 2649 Nelms Court, Decatur, Georgia address. [DSMF ¶ 11; Doc. 6-9, Ex. G].

On October 22, 2009, Defendant's records indicate that Plaintiff made his last payment on the Account in the amount of $425.00. Thereafter, the Account had a balance of $26,845.57. According to Defendant, Plaintiff has not made any payments on the Account since October 22, 2009. [Pyle Decl. ¶ 13].

On November 28, 2009, the Account was charged off as a loss to Defendant in the amount of $26,845.57. At that time, the Account was assigned a new number ending in 9690 for accounting purposes. [DSMF ¶ 13; Doc. 1 at 16].

Between September 2011 and February 2013, Defendant received three disputes from consumer reporting agencies ("CRAs") in which Plaintiff disputed his responsibility for the Account.  The disputes asserted that the Account was "not his/hers" and requested that Defendant "provide or confirm complete ID."  [Doc. 6-2, Pyle Decl., ¶ 15(a)-(c)].

When Defendant receives a dispute from a CRA in which a consumer claims that an account is "not his/hers," Defendant's personnel "provide or confirm complete ID" by comparing the consumer's personal identifiers as shown in the dispute with the personal identifiers listed in Defendant's records as belonging to the accountholder. Those personal identifiers include the consumer's name, Social Security number, and home address.  [DSMF ¶ 15].

Each of the three disputes identified the consumer's name as "Reginald B. Ware."  The disputes indicated that Ware had a Social Security number ending in 1703, and that his home address was 2649 Nelms Court, Decatur, Georgia, 30033. Defendant's records showed that the Account at issue belonged to the same person, with the same Social Security number, and the same home address.  As a result, Defendant asserts that its personnel "confirmed" that the "complete ID" of the holder of the Account matched the information provided in the disputes and, accordingly, that

11

the Account was being reported in connection with the correct consumer.  [DSMF ¶ 16].

On or about January 9, 2013, Defendant issued a Form 1099-C to Plaintiff that reflected the amount of the uncollected balance due on Plaintiff's Account for which Plaintiff was "personally liable for repayment."  [DSMF ¶ 17; Doc. 1 at 16].

## V.  DISCUSSION

### A.   Plaintiff's FDCPA Claim (Count I)

The FDCPA prohibits "debt collectors" from engaging in unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, deceptive, or misleading statements in connection with the collection of any debt, and the Act requires that debt collectors make certain written disclosures.  15 U.S.C. §§ 1692a, 1692d, 1692e, 1692f, 1692g.

To prove a claim under the FDCPA, a plaintiff must sufficiently plead and establish that: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.  Buckley v. Bayrock Mortg. Corp., No. 1:09-CV-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (citing

12

<u>Beadle v. Haughey</u>, No. Civ. 04-72-SM, 2005 WL 300060, at *2 (D.N.H. Feb. 9, 2005)).

Plaintiff alleges in his complaint that he is "a natural person allegedly obligated [ ] to pay a debt owed or due, or asserted to be owed or due a creditor other than the Defendant." [Compl. at ¶ 9].  In Count I, Plaintiff alleges that Defendant violated the FDCPA by attempting to collect on an alleged debt from the Plaintiff and by failing to validate the debt in accordance with the FDCPA.  Count I does not identify which provision or provisions of the FDCPA were purportedly violated.

Section 1692g(b) of the FDCPA provides that when a timely written request for validation of a debt is received by a debt collector, it must cease collection activities until such time as it mails verification of the debt to the debtor.  15 U.S.C. § 1692g(b). In other words, § 1692g prohibits a debt collector from making debt collection efforts before responding to a debt validation request.  However, it is well established that the FDCPA applies only to "debt collectors" and not to creditors attempting to collect their own debt.  <u>See</u> <u>Smith v. IndyMac Fed. Bank, F.S.B.</u>, No. 1:10-CV-1348-TWT-CCH, 2010 WL 5490728, at *6 (N.D. Ga. Sept. 28, 2010) (citing 15 U.S.C. § 1692a(6)).

Although paragraph 11 of Plaintiff's complaint tracks the statutory definition of "debt collector" under § 1692a(6) of the FDCPA, Plaintiff has failed to establish that

13

Defendant is a "debt collector" as defined in the FDCPA.  See 15 U.S.C. § 1692a(6); Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012) (concluding that in order to state a plausible FDCPA claim, a plaintiff must allege, among other things, (1) that the defendant is a "debt collector," and (2) that the challenged conduct is related to debt collection).

Under the FDCPA, "the term 'debt collector' does not include ... any person collecting or attempting to collect any debt to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person."  Anderson v. Deutsche Bank Natl'l Trust Co., No. 1:11-cv-4091-TWT-ECS, 2012 WL 3756512, at *3-4 (N.D. Ga. Aug. 6, 2012) (citing 15 U.S.C. § 1692a(6)(F)).  Thus, a consumer's creditors or an assignee of a debt are not considered "debt collectors" so long as the debt was not in default at the time it was assigned.  Id. (citing 15 U.S.C. § 1692a(6)(F)(iii); LaCosta v. McCalla Raymer, LLC, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *6 (N.D. Ga. Jan. 18, 2011)); see also Hennington v. Greenpoint Mortg. Funding, Inc., Nos. 1:09-CV-00676-RWS, 1:09-CV-00962-RWS, 2009 WL 1372961, at *6 (N.D. Ga. May 15, 2009) (holding that defendants "were not debt collectors because they were attempting to collect their own debt"); Ingram v. Green & Cooper, Attorneys L.L.P., No. 1:11-cv-03475-TWT-RGV, 2012 WL 1884598, at

14

*3 (N.D. Ga. Apr. 20, 2012) (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

Here, it is undisputed that Plaintiff's Account was not in default when Defendant acquired it in 2006. Plaintiff acknowledges that after he opened his account with MBNA, Bank of America and then FIA took over his Account. [Doc. 12 at 2]. Plaintiff has offered no evidence to show that his Account was in default when FIA acquired it in 2006, nor has he even attempted to address the issue. Plaintiff has also offered no evidence showing that Defendant is not the creditor on his Account.

For the reasons stated, Plaintiff has failed to establish that Defendant is liable for violating the FDCPA. Accordingly, I recommend that Defendant's motion for summary judgment be granted as to Plaintiff's Count I FDCPA claim(s).

**B.    Plaintiff's FCRA Claim (Count II)**

In Count II of Plaintiff's complaint, Plaintiff alleges that Defendant violated the Fair Credit Reporting Act by reporting a delinquent debt on the Plaintiff's credit bureau report from January 2010 until the present, even after he disputed the debt with all three consumer reporting agencies and Defendant sent Plaintiff a Form 1099-C stating that the debt had been cancelled. [Compl. at 6-7].

15

In general, the FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies ("CRAs"), users of consumer reports, and furnishers of information to CRAs.  <u>Chipka v. Bank of America</u>, 355 F. App'x 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2).

In this case, Defendant does not dispute that it furnished information about Plaintiff's Account to the three CRAs identified by Plaintiff.  The FCRA imposes two separate duties on furnishers.  <u>Green v. RBS Nat'l Bank</u>, 288 F. App'x 641, 642 n.2 (11th Cir. 2008).  First, § 1681s-2(a) requires furnishers to submit accurate information to CRAs.  <u>Id.</u>  Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes.  <u>Id.</u>

Plaintiff has not identified the particular provision or provisions of the FCRA that he contends the Defendant violated.  Instead, Plaintiff generally alleges that Defendant violated the FCRA by submitting inaccurate information regarding Plaintiff's Account.  Although § 1681s-2(a) requires furnishers to submit accurate

16

information to CRAs, the FCRA does not provide a private right of action to redress such a violation. <u>Steed v. EverHome Mortg. Co.</u>, 308 F. App'x 364, 369-70 (11th Cir. 2009). Only "federal agencies, federal officials, and state officials" may enforce this provision. <u>See</u> <u>Green</u>, 288 F. App'x at 642 n.2 (citing 15 U.S.C. §§ 1681s-2(c), (d); 15 U.S.C. § 1681s(c)(1)(B)).

The FCRA does provide consumers with a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a CRA. <u>Id.</u> at 642. Section 1681s-2(b) imposes duties on furnishers of information to, *inter alia*, investigate disputed information and report the results of any such investigation to the CRA. 15 U.S.C. § 1681s-2(b). A furnisher's duties under the statute are not triggered, however, until after a furnisher receives notice from a CRA of a consumer's dispute with regard to the completeness or accuracy of the information in a consumer's credit report. <u>See</u> <u>id.</u>; <u>Sampson v. Washington Mut. Bank</u>, No. 11-11400, 2011 WL 4584780, at *4 (11th Cir. Oct. 5, 2011).

For Plaintiff to prevail on his FCRA claim pursuant to § 1681s-2(b), Plaintiff must allege and establish that he notified a consumer reporting agency that he disputed the completeness or accuracy of information in his credit report that was furnished by Defendant, the CRA gave notice of Plaintiff's dispute to Defendant as a furnisher, and

17

Defendant did any one of the following: (1) failed to conduct a reasonable investigation of the identified dispute(s); (2) failed to review all relevant information provided by the CRA; (3) failed to report the results of its investigation to the CRA; or (4) if an item of information disputed by Plaintiff was found to be inaccurate, incomplete, or it could not be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information. Howard v. DirecTV Group, Inc., No. CV 109-156, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012) (citing 15 U.S.C. § 1681s-2(b); see also Taylor v. Chase Auto Fin. Corp., 850 F. Supp. 2d 637, 642 (N.D. Miss. 2012); Henderson v. BAC Home Loans Serv., LP, No. 1:10-CV-3137-TCB, 2011 WL 10843391, at *4 (N.D. Ga. June 29, 2011). A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the consumer reporting agency, concludes that there is no evidence its information is inaccurate, and accurately reports its findings to the consumer reporting agencies. See Stroud v. Bank of America, 886 F. Supp. 2d 1308, 1313 (S.D. Fla. 2012) (citing Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (concluding that creditor's verification of personal identifiers of accountholder, including name,

18

address, and date of birth, was a reasonable procedure and investigation, given the scant information it received from the CRA regarding the nature of the dispute)).

Defendant acknowledges that it received notification of three disputes from CRAs in which Plaintiff disputed his responsibility for the Account. [Pyle Decl. at 4-5]. Thus, in order to defeat Defendant's motion for summary judgment, Plaintiff must establish that upon being notified of Plaintiff's consumer disputes, Defendant failed to conduct an objectively reasonable investigation to determine whether the disputed information was inaccurate. The burden of showing the investigation was unreasonable is on the plaintiff. See Chiang v. Verizon New England, Inc., 595 F.3d 26, 37 (1st Cir. 2010) (citing Gorman v. Wolpoff & Abramson, LLP, 585 F.3d 1147, 1156-57 (9th Cir. 2009)).

Plaintiff has failed to raise a genuine issue of material fact that Defendant's investigation was unreasonable. He has also failed to show any actual inaccuracies that Defendant could have found through conducting a reasonable investigation. Plaintiff has presented no evidence that the procedures employed by Defendant to investigate the reported disputes were in any respect unreasonable. Plaintiff has neither sought discovery on nor produced any evidence whatsoever about the procedures utilized by Defendant. The only evidence on this point consists of the uncontested Pyle

Declaration detailing the procedures followed by Defendant, which on their face do not appear to be unreasonable.

Defendant has provided evidence showing that the Bank investigated Plaintiff's "not his" disputes by comparing the personal identifiers in each dispute with the personal identifiers associated with the Account. <u>See</u> Pyle Decl. ¶ 16. Defendant's investigation revealed that the person who submitted the disputes and the person who owned the Account had the same name (Reginald B. Ware), the same date of birth, the same Social Security number, and the same home address (2649 Nelms Court, Decatur, Georgia). As a result, the Defendant concluded that their accountholder's "complete ID" information matched the information provided in the disputes, and that the Account was being reported as belonging to the correct consumer. [Doc. 13 at 7-8]. Defendant subsequently verified to all three CRAs that the amount being reported as due and payable was accurate and the Account belonged to Plaintiff. [Doc. 12 at 5].

Plaintiff has not disputed any of these facts or submitted any evidence to rebut Defendant's assertions. The signature block on Plaintiff's response in opposition indicates that he continues to reside at 2649 Nelms Court, the address to which Defendant states it sent all statements and correspondence concerning the Account from 2006 forward. Although Plaintiff has submitted two affidavits highlighting two

20

inaccuracies on the original application (wrong address and misspelled first name of wife), Plaintiff has not ever disputed that he opened the subject Account with MBNA, and that the Account was subsequently assigned or transferred to Bank of America and FIA.  In his BBB complaint, Plaintiff acknowledged that he had had "this account for over 10  years" and that his card had been purchased by Defendant from MBNA. [Doc. 6-8 at 2].

Plaintiff has failed to explain or show how the supposed "inaccuracies" that he has identified on his original application for the card demonstrate that the Account did not belong to him and that the Defendant's investigation was not objectively reasonable.  Thus, Plaintiff has failed to meet his burden to defeat Defendant's summary judgment motion.  Plaintiff's failure to demonstrate or establish any actual inaccuracies in the furnished information that a reasonable investigation could have discovered is a separate, sufficient basis for summary judgment.  See Chiang, 595 F.3d at 38-39.

## C.    Cancellation of Debt

Plaintiff next argues that summary judgment is inappropriate because there is a genuine dispute as to whether the alleged debt was cancelled by Defendant.  Plaintiff argues that Defendant violated both the FDCPA and the FCRA by issuing a

21

Form 1099-C for the unpaid balance on the Account.[2]  In support of this argument, the Plaintiff attached to his complaint an unauthenticated copy of a "2012 Form 1099-C Cancellation of Debt" statement sent to him by FIA Card Services, N.A./Bank of America, which he contends evidences Defendant's cancellation of the debt at issue. [Doc. 1 at 16].  On its face, the 1099-C form references Plaintiff's credit card Account ending in 9690, and indicates that the uncollected debt in the amount of $26,845.57 was being discharged.  The form further states that "Borrower [Reginald B. Ware] was personally liable for repayment of debt." [Id.].  Plaintiff argues that because the debt was discharged, Defendant violated the FDCPA by representing to Plaintiff that the full balance was due, and Defendant violated the FCRA by reporting to one or more CRAs that his debt remains unpaid.

Defendant argues that the undisputed evidence shows that Defendant is not a "debt collector" under the FDCPA, and therefore is not subject to that statute.  Even if Defendant were subject to the FDCPA, Defendant asserts that Plaintiff has offered no evidence that the Defendant's issuance of a 1099-C was a "false, deceptive, or misleading representation" that was made in connection with the collection of any debt.

_____

[2] A 1099-C is issued to comply with IRS reporting requirements. Capital One, N.A. v. Massey, No. 4:10-CV-01707, 2011 WL 3299934, at *3 (citing IRS Letter Ruling 2005-0207, 2005 WL 3561135 (Dec. 30, 2005)).

AO 72A
(Rev.8/82)

[Doc. 13 at 12 (citing 15 U.S.C. § 1692e)]. Defendant argues that Plaintiff fails to state a claim because a Form 1099-C does not discharge a debt, Plaintiff's debt remains outstanding, and Defendant did not violate the FDCPA by informing him that he still owes the debt. Similarly, the Defendant asserts that it did not cancel or extinguish Plaintiff's debt by filing the Form 1099-C, and therefore Plaintiff cannot demonstrate that he is entitled to relief under the FCRA.

To create a genuine factual dispute, the evidence presented must be in an admissible form. See Fed. R. Civ. P. 56(c). The Plaintiff has not established a foundation for the admission of the unauthenticated Form 1099-C that he attached to his complaint. The form is being offered for the truth of the matters asserted therein and therefore constitutes hearsay. While it is possible that the form could be admissible under the business record exception to the hearsay rule (Fed. R. Evid. 803(6)), the Plaintiff has failed to authenticate the form for this purpose. The form that he submitted is also incomplete. In his response brief, Plaintiff quotes from the printed text and instructions that he states are located on the reverse side of the Form 1099-C that he received from Defendant; however, Plaintiff has only submitted as an exhibit the front side of the 1099-C.

23

Even if the 1099-C form were admissible evidence, it does not raise a genuine dispute of fact for purposes of the Defendant's summary judgment motion.  According to the Internal Revenue Service, the issuance of a Form 1099-C does not, alone, operate to extinguish a debt.  In an Information Letter dated December 30, 2005, the IRS explained: "The Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection."   See IRS Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005) ("IRS Letter").

The parties have not cited, and the Court has not discovered, any case in this circuit applying the principles contained in the IRS Letter to a particular case. However, Defendant has cited numerous courts in other jurisdictions that have followed the letter's reasoning and concluded that a Form 1099-C does not legally extinguish or cancel a debt.  See, e.g., Atchison v. Hiway Fed. Credit Union, No. 12-2143 (DWF/FLN), 2013 WL 1175020, at *3 (D. Minn. Mar. 20, 2013); Fed. Deposit Ins. Corp. v. Cashion,  No. 1:11-cv-72, 2012 WL 1098619, at *7 (W.D.N.C. Apr. 2, 2012) (stating that "a Form 1099-C does not itself operate to legally discharge a debtor's liability."); Capital One, N.A. v. Massey, No. 4:10-cv-01707, 2011 WL 3299934, at *3 (S.D. Tex.  Aug. 1, 2011) (holding that a 1099-C does not discharge a

24

debtor from liability, and therefore, "the fact that Plaintiff issued a 1099-C in relation to the Borrowers' indebtedness is irrelevant and does not raise a genuine issue of material fact"). See also Owens v. Comm'r, 67 F. App'x 253, 2003 WL 21196200, at *3 (5th Cir. 2003) (issuance and filing of Form 1099-C does not constitute actual cancellation of the loan); United States v. Reed, No. 3:09-cv-210, 2010 WL 3656001, at *2-3 (E.D. Tenn. Sept. 14, 2010) (same); In re Zilka, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) (holding that Forms 1099-C, as a matter of law, do not themselves operate to legally discharge debtors from liability on those claims that are described in such Forms 1099-C); Leonard v. Old Nat'l Bank Corp., 837 N.E.2d 543, 545-46 (Ind. Ct. App. 2005) (filing a Form 1099-C is merely an informational filing with the IRS, and thus does not operate to cancel debt itself).

Plaintiff has cited no authority that contradicts or distinguishes the case law cited by Defendant. Apart from quoting Black's Law Dictionary definitions of "debt," "cancellation," and "discharge," Plaintiff has failed to point the court to any documentary or testamentary evidence, or binding or even persuasive legal authority to support his claim that the 1099-C extinguished his obligation to pay the debt, or that Defendant cancelled or forgave his debt, and that Defendant is somehow "attempting to collect on a nonexistent debt twice, from the Internal Revenue Service and the

25

Plaintiff."  [Compl. at 7].

In sum, Plaintiff has not meaningfully disputed or refuted any of the evidence submitted by Defendant in its motion for summary judgment.  Plaintiff does not deny in his affidavit that his signature appears on his credit card application and access checks bearing his current address.  He does not dispute that credit cards for the Account, correspondence related to the Account, and five years' worth of Account statements were sent to him at the Decatur, Georgia address where he still resides. He has also presented no argument or evidence to challenge or rebut the reasonableness of Defendant's investigation of his disputes, or demonstrated that the furnished information was inaccurate.

For all the reasons stated, I find that Defendant is entitled to summary judgment on Plaintiff's claims under the FDCPA and the FCRA.

## VI.  CONCLUSION

For the reasons stated, I **RECOMMEND** that Defendant's motion for summary judgment [Doc. 6] be **GRANTED** in its entirety.

26

**IT IS SO RECOMMENDED**, this 4th day of December, 2013.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

27